UNITED STATES of America,
Plaintiff,

v.

Benjamin WALDMAN, Defendant.

Crim. A. No. 66–57.

United States District Court
D. New Jersey.

March 25, 1958.

Chester A. Weidenburner, U. S. Atty., Newark, N. J., by Jerome D. Schwitzer, Asst. U. S. Atty., Asbury Park, N. J., for plaintiff.

Anthony A. Calandra, Newark, N. J., for defendant.

HARTSHORNE, District Judge.

Defendant, Waldman, was indicted and found guilty by a jury, of having aided and abetted one Alan Rosenberg in transporting in interstate commerce $35,000, knowing the same to have been taken by fraud from others. 18 U.S.C.A. Crimes, § 2314. Thereafter he moved this Court for a new trial or an acquittal, on the ground that Rosenberg, who testified against him, was a perjurious witness, relying in that regard particularly upon the recent decisions of the United States Supreme Court in Communist Party v. Subversive Activities Control Board, 1956, 351 U.S. 115, 76 S.Ct. 663, 100 L.Ed. 1003 and Mesarosh v. United States, 1956, 352 U.S. 1, 77 S.Ct. 1, 1 L.Ed.2d 1.

The trial was lengthy because it involved proof of the original fraud in the form of a devious confidence game, by which Rosenberg and perhaps, but not necessarily, Waldman, defrauded these third parties of this $35,000 through the purported sale to them of a large quantity of nickel anodes which did not exist

in fact. The facts are further complicated due to Rosenberg's having previously pleaded guilty in the midst of his earlier trial, on a previous indictment for transporting this same $35,000 in this same interstate commerce as a result of this same fraud, though Waldman's alleged complicity in this transportation was unknown to the Government at the time of Rosenberg's trial.

However, it would appear quite unnecessary to consider and analyze the many facts involved in the case at bar, since the application of certain fundamental principles of law would appear decisive of the above defense motion.

■■ In the first place, it is elementary law that the primary authority to decide questions of fact, and to pass on the truth or falsity of testimony generally, is the jury. In this case this primary authority, the jury, has already passed on every iota of evidence on which the defendant relies as showing alleged perjury in this case. This consists solely of the claim that as to certain details of the original fraud Rosenberg's testimony differs from that of certain of the other witnesses, though, on the whole, he and they were in accord as to how that fraud, and the resulting interstate transfer of the money, was consummated. In the next place, Rosenberg was apparently incorrect in his testimony that he held the transcript of his own trial in his hands when he talked with Waldman before Waldman's trial. But it should be noted that this incident occurred many months after the crime here involved, so the existence or nonexistence of the transcript in Rosenberg's hands at that late date can have no direct bearing on Waldman's guilt, but merely affects the credibility of Rosenberg and Waldman—a matter directly within the purview of the jury, now settled by its verdict.

But, quite regardless of the fact that all the above only indicated that Rosenberg might have been incorrect as to certain details of the fraud, and as to a certain detail occurring long after the crime, the point is that the jury had before them the complete evidence as to this testimony by Rosenberg and as to the fact that it was apparently incorrect. Indeed, defense counsel throughout the entire case, to use the colloquial, "tried Rosenberg." In addition at the request of defense counsel, the court in its charge to the jury pinpointed to the jury this allegedly incorrect testimony by charging them the principle of law known as *falsus in uno, falsus in omnibus*. Thus, after the primary authority to pass on the credibility of witnesses has done so with full knowledge of all the testimony, its truth and falsity, the defendant now asks this Court to reverse this decision of the jury on this question, so peculiarly within its primary authority.

Nor does counsel cite a single decision laying down any such rule. Every decision cited in defendant's brief, including *Communist Party*, supra, and *Mesarosh*, supra, are cases dealing with a radically different situation. In none of such cases had the perjury, later relied on, been known to the jury—or to the board in *Communist Party*, supra—when it was passing on the evidence and rendering its verdict. In all of these cases the fact that the witness was a perjurer was unknown at that time, and only called to the attention of the court, either by a recantation of the witness after the verdict or, as in *Mesarosh*, supra, and *Communist Party*, supra, by facts ascertained, called to the attention of the court, and admitted by the Government, all after the verdict or hearing. Obviously, under such circumstances, the jury, the primary authority to determine questions of truth and falsity, had been misled in its verdict by such unknown falsity and could no longer be resorted to in order to do justice. Obviously, the only way by which the court could see that a just judgment was reached was by having the court itself pass on the truth or falsity of the testimony in the light of this newly discovered evidence. Of course, if it appeared therefrom, or if the Government admitted, that material false testimony had been wilfully given at the trial, there was nothing the court could then

do, be it the trial court, as in *U. S. v. Flynn,* D.C.S.D.N.Y.1955, 130 F.Supp. 412; 131 F.Supp. 742 or the Supreme Court of the United States, as in *Communist Party,* supra, and *Mesarosh,* supra, but direct a new trial, shorn of this perjury.

■ But this action by the judiciary, with primary jurisdiction over the law, and only secondary jurisdiction over the facts in jury trials, is taken only because this matter of credibility cannot possibly be submitted to the primary authority, the jury, which has been misled in its verdict by lack of knowledge of the falsity of the testimony. However, when, as in the case at bar, the jury has not been misled in its verdict by this false testimony, but has fully considered it, with knowledge of its alleged falsity, at the pointed direction of both defense counsel and the court, clearly a judge has no right to reverse the determination in that regard by the jury itself, even assuming certain of this testimony to have been perjurious. For this court to reverse this finding of fact by the jury, in the absence of proof of palpable error and mistake on its part, would fly in the face of the most elemental principles of the law. Just consider the situation which would arise if the law authorized the granting of the defense application. This would mean that every time there was a substantial difference in the testimony in a case giving rise to the possibility of perjury—and such is the situation in almost every trial—the trial judge must again pass judgment on the very issue before the jury and perchance order a new trial stricken of the testimony in question. Since this situation occurs in trials almost daily, the confusion and uncertainty that would follow every jury trial beggars the imagination. In point of fact, to this Court there does not seem to be the slightest semblance of error or mistake on the part of the jury in its verdict here. The verdict is clearly supported by the evidence.

The defense motion will be denied and an order may be entered accordingly.